**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

BEULAH ROSE,                                             -
                                                        -
      Plaintiff,                                   -
                                                        -
v.                                                      -     Case No.: 6:12-cv-00061-NKM-RSB
                                                        -
LAWRENCE JOSEPH ROACH d/b/a                             -
LAW OFFICE OF LARRY ROACH and                          -
LAW OFFICE OF LARRY ROACH,                              -
                                                        -
      Defendant.                                   -

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, BEULAH ROSE ("Plaintiff"), through her attorneys, and in opposition to Defendant's, LAWRENCE JOSEPH ROACH d/b/a LAW OFFICE OF LARRY ROACH and LAW OFFICE OF LARRY ROACH ("Defendant"), Motion for Summary Judgment, submits the following Response.

**I.      INTRODUCTION**

On March 1, 2013, Defendant filed his Motion for Summary Judgment in this case.  The single ground raised by Defendant in his motion is that the "bona fide error defense" entitles Defendant to judgment as a matter of law.  Defendant contends that despite various procedures Defendant allegedly has in place to ensure FDCPA compliance, its employee became "distracted" during a phone call to Plaintiff and failed to comply with the law.  Specifically, Defendant's employee failed to provide what is known as the "mini-Miranda" warning, a required statement that the call is from a debt collector and is an attempt to collect a debt.

For the reasons that follow, Defendant's Motion for Summary Judgment should be denied.  Defendant, who bears the burden of proof on this issue, has failed to demonstrate either:

(1) that the "error" alleged (its "distracted" employee simply failing to comply with the law) is the type covered by the bona fide error defense; or 2) that it had adequate procedures in place designed to prevent this type of error.

Moreover, while Defendant seeks to persuade this Court that it is a careful collector, with extensive procedures in place for FDCPA compliance, who is simply the victim of a single employee error, this is not the case.  In fact, Defendant is a habitual offender who has been sued on *at least* eight other occasions for the exact violation which occurred here.  Defendant's pattern of failing to provide the required "mini-Miranda" warnings not only raises a genuine dispute as to whether it truly has in place the procedures it alleges, it also raises an additional genuine dispute as to whether these procedures, if they do exist, are sufficient and reasonably tailored to prevent violations.  In short, Defendant cannot sustain its burden, and is not entitled to summary judgment on his bona fide error defense.

## II.    STANDARD OF REVIEW

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute of material facts and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994).  The court must construe all facts in the light most favorable to the nonmoving party, drawing all reasonable and justifiable inferences in his favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party bears the burden of proving the absence of genuine disputes of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  Summary judgment is a severe remedy to be applied sparingly, as "[i]t is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.

Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v Columbia Broadcasting* (1962) 368 U.S. 464, 473, 82 S.Ct. 486 491.

## III.   STATEMENT OF MATERIAL DISPUTED AND UNDISPUTED FACTS.

Plaintiff has significant disagreement with many of the "undisputed facts" which Defendant has identified in its Motion for Summary Judgment. Moreover, there are additional facts not included in Defendant's statement which also demonstrate that there are genuine disputes of fact in this case, and that Defendant is not entitled to judgment as a matter of law.

### A.   Response to Defendant's Statement of Undisputed Facts

1.  It was reported to the Defendants that Plaintiff defaulted on a credit card debt in the amount of $2,080.59.

**Response:**  Admitted on information and belief**.**

2.  On May 25, 2012, the creditor, GE Money Retail Bank, assigned the Plaintiff's delinquent account to the Defendants for collection.

**Response:**  Admitted on information and belief.

3.  The Defendants' efforts to collect Plaintiff's debt included several telephone calls and messages to the Plaintiff. In every message except one, the Defendants' employees disclosed that the communication was from a debt collector, was an attempt to collect a debt, and any information obtained would be used for that purpose.

**Response:**  Admitted**.**

4.  On June 25, 2012, one of Defendants' employees spoke with Plaintiff, who indicated that she had an attorney and gave (xxx) xxx-6932 as a contact number.

**Response:**  Admitted**.**

5.  On June 25, 2012, the employee called the telephone number the Plaintiff provided and spoke with Dave Abeling, who at that time confirmed his representation of the Plaintiff and told the employee he would fax a representation letter.

**Response:**  Admitted on information and belief.

6.   Thereafter, in a subsequent telephone conversation, Mr. Abeling disavowed his earlier statements and advised that he was not the Plaintiff's attorney and was not representing her in any capacity.

**Response:**  Admitted on information and belief.

7.   Billy Kuzia is one of the Defendants' employees, and, at the time of the events alleged in the Complaint, had been employed by the Defendants as a debt collector for approximately seven (7) years.  During this time period, he received mandatory pre- and post-employment screening, testing, continuing education, and monitoring with regard to FDCPA compliance generally and proper communication procedures – such as leaving FDCPA compliant voice-mail messages – with consumers specifically.

**Response:**   Admitted on information and belief that Mr. Kuzia is one of the Defendant's employees, and, at the time of the events alleged in the Complaint, had been employed by the Defendant as a debt collector for approximately seven (7) years.   Denied as to the remainder of the facts in this paragraph.   The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).

8.   On June 29, 2012, Mr. Kuzia telephoned Plaintiff's residence and left a voice-mail message for her.  The entirety of Mr. Kuzia's message is as follows:

> This is a confidential message for Beulah Rose.  If we have reached the wrong number for this person, please give us a call back at 866-204-3699 so we can remove your telephone number and if you will please erase this message.  If this is the correct number for . . . Beulah . . . Rose . . . (unintelligible), ma'am, this is the Law Office of Larry Roach, I do need a return phone call as soon as possible to 866-204-3699, my direct extension is 4003.

**Response:**  Admitted**.**

9.   At all times relevant to this lawsuit, the Defendants maintained a forty-six (46) page Compliance Policy and Procedure Manual.  The Manual is updated on at least an annual basis, and includes debt collection policies and procedures with the aim of ensuring strict compliance with the FDCPA.

**Response:**   Admitted that Defendant maintained a forty-six page manual, which includes debt collection policies and procedures.  Admitted on information and belief that the Manual is updated on at least an annual basis.  Denied that the aim of the Manual is ensuring strict compliance with the FDCPA.  The fact that Defendant has

been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have the intention of avoiding FDCPA violations.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant does not have the intention of avoiding FDCPA violations.  (Def. Ex. A, Roach Aff. ¶18, 44-45).

10.  Each employee of the Defendants is given a copy of the Manual and is required to sign a certificate that they will comply with the policies and procedures outlined therein in all debt collection efforts they undertake during their employment with the Defendants.

**Response:**  Admitted on information and belief.

11. The Defendants require potential candidates for a debt collector position to attend one week of initial training where they are trained on FDCPA compliance procedures and measures.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).

12. The Defendants require prospective debt collector employees to take and pass a written examination designed to test their knowledge and understanding of the FDCPA requirements for debt collection.  The Defendants developed the written examination from materials approved by ACA International, the Association of Credit and Collection Professionals.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, this fact is irrelevant to Defendant's bona fide error defense, as Defendant has provided no evidence that an employee must get the questions regarding the FDCPA's required warnings correct in order to pass this test – although Defendant states that these warnings are included on the test, its evidence states that a perfect score is not required, and nowhere states that a correct answer on these questions is required for a

"passing" score.  (Def. Ex. C, Kuzia Aff. ¶¶5-6, 11; Def. Ex. A, Roach Aff. ¶¶10-14, 22).

13. The written examination tests, among other things, knowledge of the disclosure requirements of 15 U.S.C. §1692e(11) and proper communication with consumers during the debt collection process.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).

14. Debt collector candidates get two opportunities to pass the written examination before they are removed from further employment consideration.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, this fact is irrelevant to Defendant's bona fide error defense, as Defendant has provided no evidence that an employee must get the questions regarding the FDCPA's required warnings correct in order to pass this test – although Defendant states that these warnings are included on the test, his evidence states that a perfect score is not required, and nowhere states that a correct answer on these questions is required for a "passing" score.  (Def. Ex. C, Kuzia Aff. ¶¶5-6, 11; Def. Ex. A, Roach Aff. ¶¶10-14, 22).

15. Debt collector employees are not permitted to communicate with consumers or undertake any debt collection efforts until they receive their one week of training and successfully pass the written examination.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, this fact is irrelevant to Defendant's bona fide error defense, as Defendant has provided no evidence that an employee must get the questions regarding the FDCPA's required warnings correct in order to pass this test – although Defendant states that these warnings are included on the test, his evidence states that a perfect score is not required, and nowhere states that a correct answer on these questions is required for a

"passing" score.  (Def. Ex. C, Kuzia Aff. ¶¶5-6, 11; Def. Ex. A, Roach Aff. ¶¶10-14, 22).

16. After they are hired, the Defendants provide their debt collector employees with ongoing monthly training on significant FDCPA developments and industry trends, and they are required to pass an annual written re-examination on FDCPA compliance issues and procedures.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, this fact is irrelevant to Defendant's bona fide error defense, as Defendant has provided no evidence that any of these monthly "training sessions" addressed the disclosure requirements at issue in this case.  (Def. Ex. C, Kuzia Aff. ¶8; Def. Ex. A, Roach Aff. ¶14).

17. The Defendants developed and implemented a Compliance Program designed to ensure that debt collection is done in a manner that is in compliance with the letter and the spirit of the FDCPA and state debt collection laws.  The Compliance Director is charged with the responsibility of ensuring that the Defendants' employees comply with the FDCPA, and is empowered to discipline employees for violations.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant does not have the intention of avoiding FDCPA violations.  (Def. Ex. A, Roach Aff. ¶18, 44-45).  Additionally, while the Compliance Director may be empowered to discipline on some occasions, the evidence indicates that she was not actually charged with ensuring compliance, and did not in fact discipline employees for the violation at issue in this case.  (Def. Ex. C, Kuzia Aff., ¶10; Ex. A, Roach Dep. at 57-59, 99-101, 108-09).

18. As part of the Defendants' ongoing commitment to comply with the requirements of the FDCPA, all debt collectors' telephone calls are subject to monitoring at a minimum of one telephone call per collector per week.  These calls are scored for FDCPA compliance, and any collector that scores below 90% receives additional training and coaching to improve.

**Response:** Denied. The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges. (Ex. A, Roach Dep. at 78-98; Exs. B-I). This fact is also irrelevant to Defendant's bona fide error defense, as complete compliance was not required to avoid "additional training and coaching," let alone discipline, and Defendant has provided no evidence that the failure to include the warnings at issue in this case would itself trigger any action. (Def. Ex. A, Roach Aff. ¶18). Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant does not have an "ongoing commitment" to avoiding FDCPA violations. (Def. Ex. A, Roach Aff. ¶18, 44-45).

19. Approximately ten (10) of the forty-six (46) pages in the Manual are dedicated to procedures for FDCPA compliance in telephone communications with consumers and leaving messages for consumers.

**Response:** Admitted on information and belief.

20. The Defendants' debt collector employees are instructed to follow a seven-step process to ensure that telephone communications with consumers comply with the FDCPA. This seven-step process specifically instructs the debt collector to inform the consumer that the communication is (a) from a debt collector, (b) an attempt to collect a debt, and (c) any information obtained will be used for that purpose.

**Response:** Denied. The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges. (Ex. A, Roach Dep. at 78-98; Exs. B-I). Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant's employees receive the message that full FDCPA compliance is not necessary. (Def. Ex. A, Roach Aff. ¶18, 44-45). The fact that employees were never actually disciplined for the violation at issue in this case likewise indicates that Defendant's employees understood that Defendant did not actually require them to issue these warnings. (Def. Ex. C, Kuzia Aff., ¶10; Ex. A, Roach Dep. at 57-59, 99-101, 108-09).

21. The Defendants' debt collector employees are also instructed on FDCPA compliant language to be used when leaving telephone messages for consumers and each

collector is provided with a copy of the language in "script" form.  The script states as follows:

> Hello, this is a private message intended for (debtors first & last name).  If you are not (debtors first & last name) please hang up. <pause 3 seconds>.  This is (your first name) with the Law Office of Larry Roach.  My toll free number is 1-866-899-0475.  This message is from a debt collector and this is an attempt to collect a debt, any information will be used for that purpose.  Again please take the time to return my call today at 1-866-899-0475 ext____. Our office is open until ___ eastern standard time.  Thanks.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant's employees receive the message that full FDCPA compliance is not necessary.  (Def. Ex. A, Roach Aff. ¶18, 44-45).  The fact that employees were never actually disciplined for the violation at issue in this case likewise indicates that Defendant's employees understood that Defendant did not actually require them to issue these warnings.  (Def. Ex. C, Kuzia Aff., ¶10; Ex. A, Roach Dep. at 57-59, 99-101, 108-09).

22. Each debt collector maintains a copy of the script in size 14-point font at his or her workstation for reference during collection calls.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).

23. Any debt collection employee who fails to comply with the Defendants' policies and procedures, including the failure to inform a consumer during a telephone call that the call is from a debt collector in an attempt to collect a debt and that any information obtained will be used for that purpose, is subject to progressive discipline, including termination of employment.

**Response:**  Denied.  Defendant did not, in fact, ever discipline anyone for this violation, despite the fact that it repeatedly occurred.  (Def. Ex. C, Kuzia Aff., ¶10; Ex. A, Roach Dep. at 57-59, 99-101, 108-09).  The fact that Defendant has been sued

at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant's employees receive the message that full FDCPA compliance is not necessary.  (Def. Ex. A, Roach Aff. ¶18, 44-45).  The fact that employees were never actually disciplined for the violation at issue in this case likewise indicates that Defendant's employees understood that Defendant did not actually require them to issue these warnings. (Def. Ex. C, Kuzia Aff., ¶10; Ex. A, Roach Dep. at 57-59, 99-101, 108-09).

24. Mr. Kuzia left one (1) voice-mail message for the Plaintiff on June 29, 2012.  He began reading the required telephone script when he became distracted by another co-worker.  Mr. Kuzia lost his place and, as a result, inadvertently failed to state that the call was from a debt collector and was an attempt to collect a debt.

**Response:**  Denied.  Admitted that Mr. Kuzia left one voice-mail message for Plaintiff on June 29, 2012, and that he did not state that the call was from a debt collector and was an attempt to collect a debt.  Denied that Mr. Kuzia did not include the required warnings because he "became distracted by another co-worker."  Mr. Kuzia's affidavit simply states that he "became distracted by activity in the office[,]" with no further explanation or details.  (Def. Ex. C ¶13).  At his deposition, Defendant was even less certain:  he testified that he had spoken with Mr. Kuzia, that neither of them could explain why Mr. Kuzia failed to include the required warnings, but that Mr. Kuzia "just recalls losing his place."  (Ex. A, Roach Dep. at 74-75).

25. Mr. Kuzia's alleged failure to disclose this information during the June 29, 2012 call was inadvertent, in good faith, and unintentional.

**Response:**  Denied.  Mr. Kuzia's affidavit simply states that he "became distracted by activity in the office[,]" with no further explanation or details.  (Def. Ex. C ¶13).  At his deposition, Defendant was even less certain:  he testified that he had spoken with Mr. Kuzia, that neither of them could explain why Mr. Kuzia failed to include the required warnings, but that Mr. Kuzia "just recalls losing his place."  (Ex. A, Roach Dep. at 74-75).

26. At all times relevant to this lawsuit, the Defendants had actual policies and procedures in place to safeguard against FDCPA compliance errors.

**Response:**  Denied.  The fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that

Defendant does not have in place the training, screening, testing, and monitoring which it alleges.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant does not have the intention of avoiding FDCPA violations.  (Def. Ex. A, Roach Aff. ¶18, 44-45).  Additionally, the fact that employees were never actually disciplined for the violation at issue in this case likewise indicates that Defendant's employees understood that Defendant did not actually require them to issue these warnings.  (Def. Ex. C, Kuzia Aff., ¶10; Ex. A, Roach Dep. at 57-59, 99-101, 108-09).

27. The Defendants' policies and procedures were reasonably adapted to prevent the specific error alleged by the Plaintiff in this case – the failure to inform the consumer that a communication was from a debt collector in an effort to collect a debt and that any information obtained would be used for that purpose.

**Response:**  Denied.  First and foremost, the reasonableness of Defendant's alleged procedures is a question for the jury.  *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008); *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir. 2006).  Furthermore, the fact that Defendant has been sued at least eight times in the past three years for the exact same violation which occurred in this case, and that in neither those eight cases nor this one was the violation caught by Defendant prior to action by counsel for the debtor, or the violator disciplined at any time, indicates that Defendant does not have in place the training, screening, testing, and monitoring which it alleges, and that any procedures he had were not reasonably adapted to prevent this error.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).  Moreover, Defendant's overall practices, such as requiring only partial accuracy to "pass" FDCPA tests, and requiring only partial compliance on calls to avoid discipline or even additional training, also indicate that Defendant does not have the intention of avoiding FDCPA violations.  (Def. Ex. A, Roach Aff. ¶18, 44-45).  The fact that Defendant provides no evidence that compliance with the FDCPA's required warnings is required to either "pass" his written exams or avoid action on monitored calls also indicates that these procedures are not reasonably adapted to avoid this particular error.  (Def. Ex. C, Kuzia Aff. ¶¶5-6, 11; Def. Ex. A, Roach Aff. ¶¶10-14, 18, 22).  Additionally, the fact that employees were never actually disciplined for the violation at issue in this case likewise indicates that Defendant's employees understood that Defendant did not actually require them to issue these warnings.  (Def. Ex. C, Kuzia Aff., ¶10; Ex. A, Roach Dep. at 57-59, 99-101, 108-09).

## B.     Statement of Additional Disputed and Undisputed Facts

28. Defendant's monthly "training sessions" did not address the warnings which his employee failed to give, or methods for avoiding or managing distraction while placing collection calls.  (Def. Ex. C, Kuzia Aff. ¶8; Def. Ex. A, Roach Aff. ¶14).

29. The failure to identify a call as coming from a debt collector, for debt collection purposes, and state that any information obtained would be used for that purpose, without other violations, would not cause the call to cross Defendant's "90%" threshold and trigger any additional training or disciplinary action by Defendant.  (Def. Ex. A, Roach Aff. ¶18).

30. No employee of Defendant has ever received additional training or discipline for the failure to identify a call as coming from a debt collector, for debt collection purposes, and state that any information obtained would be used for that purpose.  (Ex. A, Roach Dep. at 99-101).

31. Discipline for Defendant's employees who violated the FDCPA would "depend[] on the violation," and "depend[] on whoever their supervisor is," but might include only warnings, or the HR person "address[ing] it with that employee[.]"  (Ex. A, Roach Dep. at 57-59).

32. Mr. Kuzia has never been disciplined for his failure to include the required warnings on the June 29, 2012 call to Plaintiff.  (Def. Ex. C, Kuzia Aff., ¶10).

33. A perfect score is not required to "pass" any of the various written FDCPA examinations administered by Defendant to its debt collection employees.  (Ex. A, Roach Dep. at 44-45; Def. Ex. C, Kuzia Aff. ¶¶5-6; Def. Ex. A, Roach Aff. ¶¶10-14, 39).

34. To "pass" any of the various written FDCPA examinations administered by Defendant to its debt collection employees, an employee need not necessarily correctly answer the questions regarding the FDCPA's required warnings.  (Def. Ex. C, Kuzia Aff. ¶¶5-6, 11; Def. Ex. A, Roach Aff. ¶¶10-14, 22).

35. Defendant has been sued at least eight times in the past three years for the ***exact violation*** which its employee committed here.  (Ex. A, Roach Dep. at 78-98; Exs. B-I).

36.  All eight (8) cases listed in #35, above, Defendant voluntarily settled either in pre-suit negotiations or before trial.  (Exs. B-I:  *Reese, v. Roach; Castruita v. Roach; Nelson v. Roach*; *Davis v. Roach*; *Tatum v. Roach*; *Smith v. Roach*; *Davis-Knapp v. Roach*; *Aiton v. Roach;* Ex. A, Roach Dep. at 78-98).

37. In none of the cases listed in #35, above, did Defendant's alleged screening mechanisms catch the violation (each was brought to Defendant's attention by counsel for the consumers).  (Ex. A, Roach Dep. at 78-98).

38. In none of the cases listed in #35, above, did Defendant take any disciplinary action against the employee-collector for the failure to issue the required warnings.  (Ex. A, Roach Dep. at 78-98).

39. Defendant has no policies or procedures designed to prevent distraction by debt collection employees placing debt collection calls.  (*See generally*, Ex. A, Roach Dep.).

40. Defendant has no policies or procedures designed to ensure FDCPA compliance when distraction by debt collection employees placing debt collection calls occurs. (*See generally*, Ex. A, Roach Dep.).

## IV.   DEFENDANT HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT DEFENDANT'S CONDUCT WAS THE RESULT OF A BONA FIDE ERROR.

### A.   Defendant Bears the Burden of Providing Elaborate Descriptions of Procedures Reasonably Adapted to Avoid the Specific Error at Issue.

In his only attempt to rebut Plaintiff's § 1692e(11) claim, Defendant asserts that he is entitled to the *bona fide* error defense.  The *bona fide* error defense exists only as an exception to the strict liability imposed upon debt collectors by the FDCPA.  To prevail on a *bona fide* error defense, Defendant must establish by a preponderance of the evidence that the violation was unintentional and resulted from a *bona fide* error, notwithstanding procedures reasonably adapted to avoid such error.  15 U.S.C. § 1692k(c); *Drossin*, 641 F. Supp. 2d at 1320 (S.D. Fl. 2009); *Reichert v. Nat'l Credit Sys., Inc.*, 531 F. 3d 1002, 1005-1006 (9th Cir. 2008).

Importantly, the purpose of a bona fide error defense, pursuant to section 1692k(c), is not to shield debt collectors from systemic errors or abuses.  *See Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495, 1502 (D. N.M. 1994).  Instead, "the purpose of the bona-fide-error defense is to protect debt collectors from inadvertent clerical errors."  *Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129, 1132 (D. Minn. 2005); *see also Baker v. GC Servs. Corp.*, 677 F. 2d 775, 779 (9th Cir. 1982) ("It has been uniformly held that unintentional clerical errors...are the only violations this section (of the TILA) was designed to excuse.") (internal citations omitted).  As such, an error is "bona fide" only if it is made in good faith, inadvertently, and without fraud or deceit.  *Caputo v. Prof'l Recovery Servs., Inc.*, 261 F. Supp. 2d at 1256-1257.

Moreover, the burden of proving the bona fide error defense lies with the debt collector. To prevail on a bona fide error defense a debt collector must prove three criteria by a preponderance of evidence: (1) the debt collector's violation of the Act was unintentional; (2) the debt collector's violation of the Act resulted from bona fide error; and (3) the violation occurred despite procedures reasonably adapted to avoid such errors. *Beck v. Maximus, Inc.*, 457 F. 3d 291, 297-298 (3d Cir. 2006); *Johnson v. Riddle*, 443 F. 3d 723, 727-728 (10th Cir. 2006). As detailed below, Defendant did not meet this burden.

The existence of reasonably-adapted procedures is "a fact-intensive inquiry" which requires relatively "elaborate" descriptions of the procedures in place. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008); *see also Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992) (multiple employee affidavits explaining the error, five-page collection manual explaining the procedures at issue); *Campbell v. Hall,* 624 F.Supp.2d 991, 1004 (N.D. Ill. 2009); *Bible v. Allied Interstate, Inc.,* 2001 WL 1618494 at *3 (D.Minn.2001) (multiple affidavits "explaining the lengths to which Allied goes"); *Howe v. Reader's Digest Ass'n, Inc.,* 686 F.Supp. 461, 467 (S.D.N.Y.1988) (multiple affidavits explaining "extensive systems and procedures"). To prevail on the defense, "[t]he procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. Only then is the mistake entitled to be treated as one made in good faith." *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) (internal citations omitted). Further, whether the specific procedures Defendant did, in fact, maintain were reasonable is a question for the jury. *See id.; Johnson,* 443 F.3d 731-32.

"Whereas the intent prong of the bona fide error defense is a subjective test, the *bona fide* and the procedure prongs are necessarily objective tests." *Drossin*, 641 F.Supp.2d at 1320 *citing*

*Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir. 2006); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005).  In light of the FDCPA's remedial scheme, courts have taken the position of interpreting this affirmative defense narrowly.  *See Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 591 (D.Md.1999) (*citing Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F. 2d 22, 27 (2d Cir.1989); *Hulshizer v. Global Credit Services, Inc.*, 728 F. 2d 1037, 1038 (8th Cir.1984); and *Baker v. G.C. Services Corp.*, 677 F. 2d 775, 779 (9th Cir. 1982)).  In addition to determining whether the debt collector maintained and employed procedures to avoid errors, the procedures must be reasonably adapted to avoid the ***specific error*** at issue.  *Hepsen v. J.C. Christensen and Assocs., Inc.,* 2009 WL 3064865 *6 (M.D. Fla. Sept. 22, 2009) (*citing Johnson v. Riddle,* 443 F. 3d 723, 729 (10th Cir. 2006)).

### B.   Defendant Has Failed to Provide Evidence of Procedures Reasonably Adapted to Avoid the Specific Error at Issue.

In the present case, Defendant fails to provide evidence of policies and procedures reasonably adapted to avoid Plaintiff's specific allegations that Defendant violated § 1692e(11) of the FDCPA.  Defendant claims that he has policies and procedures in place whereby his collectors are educated and tested regarding the "mini-Miranda" requirement of the FDCPA, and are given a script which directs the collectors to disclose that the calls are being placed from a debt collector.  (*See generally*, Motion).  Defendant also claims that he randomly monitors collection agents – at least one call each per week – and that those whose compliance with FDCPA rules during those calls is less than 90% are subject to additional training or discipline. (*Id.*)

However, Defendant's training and periodic reviews are inadequate to demonstrate procedures *specifically* tailored to avoid the error in question.  *See Dechert v. Cadle Co.*, 2003 WL 23008969 *4 (training on FDCPA, periodic reviews of form letters, plus assertions

regarding endeavors to always comply with FDCPA, inadequate for bona fide error).  In point of fact, the Southern District of West Virginia has specifically held that random monitoring of collection calls by supervisors to listen for violations and provide coaching or discipline is not specifically tailored to avoid a violation of any particular provision of the FDCPA.  *Clements v. HSBC Auto Finance, Inc.*, 2010 WL 4281697, *7 (S.D.W.Va. Oct. 19, 2010).  Likewise, monthly "FDCPA update" meetings to educate employees on new developments under the law, while perhaps commendable, are not specifically tailored to avoid any particular error.  (Def. Ex. C, Kuzia Aff. ¶8; Def. Ex. A, Roach Aff. ¶14).  Defendant has provided no evidence that any of these meetings actually addressed the warnings which his employee failed to give, or methods for avoiding or managing distraction while placing collection calls.  (*Id.*)

Even if random monitoring were specifically tailored to any particular error, the fact that Defendant requires only 90% compliance with the FDCPA on each call indicates that these procedures would not prevent the error in question:  Defendant provides no evidence that the failure to identify the call as coming from a debt collector, without other violations, would cause the call to cross this "90%" threshold and trigger any additional training or disciplinary action by Defendant.  (Def. Ex. A, Roach Aff. ¶18).  Indeed, Defendant provides no evidence that any employee has ever received additional training or discipline for the failure to include this required warning.  In fact, at his deposition Defendant testified that he does not recall ever disciplining any employee for the failure to include the required warning.  (Ex. A, Roach Dep. at 99-101).

Tellingly, at his deposition, Defendant testified that discipline for those who violated the FDCPA would "depend[] on the violation," and "depend[] on whoever their supervisor is," but might include only warnings, or the HR person "address[ing] it with that employee," as well as

suspensions or possibly termination for repeat offenders.  (*Id*. at 57-59).  Defendant also had no

idea whether Mr. Kuzia (the employee who committed the violation) was disciplined for the

violation at issue in this case, but Defendant was "sure that he was probably reprimanded."  (Ex.

A, Roach Dep. at 75).  He later testified that he *would have* given Mr. Kuzia a reprimand or

other discipline *if* he had learned that the violation was intentional.  (*Id*. at 108-09).  Mr. Kuzia

himself cleared up Mr. Roach's uncertain testimony in his affidavit submitted in connection with

this motion, testifying that he had "never been disciplined or reprimanded for violating any

provision of the FDCPA."  (Def. Ex. C, Kuzia Aff., ¶10).  Thus, whatever training may be

conducted, Defendant appears to have an *actual* requirement of only partial compliance with the

FDCPA to avoid nebulous discipline or additional training.  These policies send the message to

Defendant's collection agents that such partial compliance is acceptable; that failure to follow

each and every provision of the FDCPA is permissible.

     In a similar manner, Defendant's evidence of various tests which an employee must

"pass" in order to place collection calls falls short of the mark.  Defendant's evidence does

nothing to indicate what percentage is required for a passing score. (Def. Ex. C, Kuzia Aff. ¶¶5-

6; Def. Ex. A, Roach Aff. ¶¶10-14, 39).  At Defendant's deposition, he testified that he did not

know what score was required to pass the test, although he "believed" that it was "around" 95

percent, and was certain that collectors were allowed to get at least some questions wrong.  (Ex.

A, Roach Dep. at 44-45).  Nor does Defendant's evidence in any way state that an employee

must get the questions regarding the FDCPA's required warnings under § 1692e(11) of the Act

correct in order to pass this test – although Defendant states that these warnings are included on

the test, his evidence nowhere states that a correct answer on these questions is required for a

"passing" score.  (Def. Ex. C, Kuzia Aff. ¶¶5-6, 11; Def. Ex. A, Roach Aff. ¶¶10-14, 22).

In short, Defendant's alleged procedures provide an overall picture of less-than-complete FDCPA compliance.  While Defendant has put in place a system of FDCPA procedures and monitoring, it has *not* provided evidence that it actually enforces the FDCPA requirement of "mini-Miranda" warnings pursuant to § 1692e(11), or even that it requires its employees to fully comply with the FDCPA.  Defendant has thus failed to meet its burden of proving the existence of procedures reasonably tailored to prevent the omission of "mini-Miranda" warnings.

If Defendant's procedures were, in fact, reasonably adapted to prevent this error, then the violation in this case should be an isolated incident.  But despite what Defendant would have this Court believe, that is not the case.  In fact, Defendant has been sued at least eight times in the past three years for the *exact violation* which his employee committed here.  (*See* Exs. B-I, attached hereto).   In all eight of these cases, Defendant voluntarily settled either in pre-suit negotiations or before trial.  (Exs. B-I:  *Reese, v. Roach; Castruita v. Roach;  Nelson v. Roach*; *Davis v. Roach*; *Tatum v. Roach*; *Smith v. Roach*; *Davis-Knapp v. Roach*; *Aiton v. Roach;* Ex. A, Roach Dep. at 78-98).  But each of these cases involved (among other violations) Defendant's failure to ensure that his employees provided the "mini-Miranda" warnings required by the FDCPA, and which his employee failed to provide here.  Indeed, in *none* of these cases did Defendant's screening mechanisms even catch the violation (each was brought to Defendant's attention by counsel for the consumers), and in *none* of these cases does Defendant recall any disciplinary action against the employee-collector for the failure to issue the required warnings. (Ex. A, Roach Dep. at 78-98).

This evidence, alone, is sufficient to create a genuine dispute of fact as to whether Defendant's alleged procedures were reasonably adapted to prevent this violation.  For this reason, as well, Defendant is not entitled to summary judgment on his bona fide error defense.

Additionally, Defendant has failed to provide an adequate explanation or evidence as to how its employee became distracted, and what procedures, if any, it has in place to prevent such distraction.  Mr. Kuzia's affidavit simply states that he "became distracted by activity in the office[,]"  (Def. Ex. C ¶13), although Defendant's brief refers to his becoming "distracted by another co-worker."  (Motion at 6, 15).  At the deposition, Defendant was even less certain:  he testified that he had spoken with Mr. Kuzia, that neither of them could explain why Mr. Kuzia failed to include the required warnings, but that Mr. Kuzia "just recalls losing his place."  (Ex. A, Roach Dep. at 74-75).

Yet, Defendant provides no evidence as to any procedures designed to prevent distraction: requiring callers to wear headsets, policies prohibiting co-workers from interrupting or entering an office or cubicle during a call, etc.  He has provided no evidence of any policy designed to ensure FDCPA compliance when distraction occurs, such as instructing a caller to begin the required message over if he "loses his place."  He has thus also failed to meet his burden of proving the existence of procedures reasonably tailored to prevent employees from becoming distracted and thus failing to comply with the FDCPA.  Because Defendant has not met his burden, he is not entitled to summary judgment on his bona fide error defense.

### C.    Genuine Disputes of Fact Exist as to Whether Defendant Actually Employed Procedures Reasonably Adapted to Avoid the Specific Error at Issue.

As discussed above, Defendant is a habitual offender who has been repeatedly sued for the exact FDCPA violation at issue here.  *See supra*.  Not only does this evidence call into question whether Defendant's procedures were reasonably designed to prevent FDCPA violations, it also creates a genuine dispute of fact as to whether the procedures Defendant describes were actually employed.

Defendant has only his own, self-serving affidavit and that of its employee to support the existence of the measures it claims it took to avoid FDCPA violations. If the procedures described by Defendant were truly employed, however, it seems unlikely that Defendant would continue to repeatedly commit the same FDCPA violations. Yet, that is what has occurred.

Because the evidence of an FDCPA defendant's procedures is entirely within his own control, it is unlikely that a plaintiff could ever present direct evidence that the collector does not employ the claimed procedures. But this evidence of repeatedly recurring violations is compelling circumstantial evidence calling into question whether Defendant truly employed the procedures described. Thus, in addition to the genuine dispute as to whether Defendant's procedures were reasonably adapted to prevent the error at issue, there is also a genuine dispute as to whether these procedures were actually employed. For this reason, as well, Defendant is not entitled to summary judgment on his bona fide error defense.

**D.** **Because Defendant's Violation Was Not a "Clerical or Factual Error," the Bona Fide Error Defense Does Not Apply.**

Moreover, the Supreme Court has held that the bona fide error defense cannot apply to an error that is simply unintentional – it applies only to "clerical or factual errors." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1616 (2010)). The "error" which Defendant claims caused its violation in this case was neither factual nor clerical. First, Defendant's failure to follow the law and advise Plaintiff that the call was from a collection agency for the purpose of collecting a debt was not a "factual error." A factual error is, just as it sounds, a collector's reasonable mistake as to the facts surrounding the debt: the amount owed, whether the debt was consumer debt, etc. For example, the bona fide error defense can apply where an attorney-debt collector misrepresented the amount owed, but did so mistakenly in reliance upon the creditor-client's information. *Sayyed v. Wolpoff & Abramson, LLP*, 733

F.Supp.2d 635, 644 (D. Md. 2010); *see also Long v. McMullen, Drury & Pinder, P.A.*, 2011 WL 4458849, *5 (D. Md. Sept. 23, 2011).

Second, the "error" which caused Defendant to violate the law was not "clerical." A clerical error is, as it sounds, a mistaken notation or similar problem. The *Jerman* Court itself referred to the FDCPA's precursor, the Truth in Lending Simplification and Reform Act, § 615, 94 Stat. 181, which defined bona fide errors as including "clerical, calculation, computer malfunction and program[m]ing, and printing errors[.]" *Id.*, 130 S.Ct. at 1617. Defendant references this exact standard in his brief. (Motion at 8). Yet Defendant fails to address the fact that the "error" it has alleged is nothing like these listed examples. An employee simply failing to follow the law due to a vague alleged "distraction" is not in the category of a printer or computer malfunction or a miscalculation. In fact, it is questionable whether the failure to speak required substantive warnings in a telephone call could ever be "clerical," a term denoting the work of clerks and scribes.

Defendant cites to two district court cases – neither from this District nor even within the Fourth Circuit – for the proposition that its procedures render the bona fide error defense applicable here. (Motion at 12-14). Even were these cases binding on this Court, neither addresses the Supreme Court's holding in *Jerman*. The first, *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 390 (D. Del. 1991), predates the *Jerman* decision by nearly two decades, and thus naturally fails to address the standard articulated by the Supreme Court therein. The second, *Durthaler v. Accounts Receivable Management, Inc.*, 854 F.Supp.2d 485 (S.D. Ohio 2012), not only fails to discuss the Court's holding in *Jerman*, it actually instead relies upon the Sixth Circuit opinion reversed by the Supreme Court in *Jerman*. *Id.* at 493.

Because Defendant's asserted "error" – his agent simply failing to include the language required by the statute despite instructions to do so – was neither a "factual" nor "clerical" error, the bona fide error defense does not apply.  Nor, as discussed, did Defendant have adequate procedures in place specifically tailored to avoid this particular "error."  This Court should thus deny Defendant's motion for summary judgment on his bona fide error defense.

## V.    CONCLUSION

As the moving party, Defendant has the burden to show that there are no triable issues of fact to be determined at trial and that he is entitled to judgment as a matter of law.  As such, Defendant has failed to meet his burden and, accordingly, the motion should be denied.

WHEREFORE, Plaintiff, BEULAH ROSE, respectfully requests that this Honorable Court enter an order denying Defendant's Motion for Summary Judgment and for any additional relief deemed just and appropriate.

DATED:  March 20, 2013              RESPECTFULLY SUBMITTED,


By: /s/ Adam T. Hill_____

Adam T. Hill
Admitted *Pro Hac Vice*
Krohn & Moss, Ltd.
10 N. Dearborn St., 3rd Floor
Chicago, IL 60602
Tel: (312) 576-9428 Ext. 242
Fax:  (866) 431-5576
E-Mail:  ahill@consumerlawcenter.com
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Adam T. Hill, hereby certify that on March 20, 2013, the foregoing document was filed with the Clerk of Court via the following Court's CM/ECF filing system, and that a true and correct copy was electronically served on the following via the same:

William L. Mitchell, II
Eccleston and Wolf, P.C.
10400 Eaton Place, Suite 107
Fairfax, VA 22030
Email: wmitchell@ewdc.com


By: /s/ Adam Hill _____

Adam T. Hill
Admitted *Pro Hac Vice*
Krohn & Moss, Ltd
10 N. Dearborn St., 3rd Floor
Chicago, IL 60602
Tel: (312) 578-9428 Ext. 242
Fax: (866) 431-5576
E-Mail: ahill@consumerlawcenter.com
Attorneys for Plaintiff