IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

BEULAH ROSE,

*Plaintiff,*

v.

LAWRENCE JOSEPH ROACH, ET AL.,

*Defendants.*

CASE NO. 6:12-cv-00061

<u>MEMORANDUM OPINION</u>

JUDGE NORMAN K. MOON

This matter is before the court on Defendants Lawrence Joseph Roach and the Law Office of Larry Roach's ("Defendants") motion for summary judgment. Plaintiff Beulah Rose ("Plaintiff") filed a complaint alleging that Defendants' collection activities violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). A hearing on Defendants' motion for summary judgment took place on March 28, 2013, in Lynchburg. For the following reasons, I will grant Defendants' motion for summary judgment.

## I. BACKGROUND

This case stems from a June 29, 2012 collection call Defendants made to Plaintiff, and the voicemail that one of their employees left. In that message, the Defendants' employee Billy Kuzia failed to inform Plaintiff that he was calling on behalf of a debt collector, or advise Plaintiff that he was calling about a debt collection matter, and that any information obtained would be used for that purpose. Each is a required disclosure under 15 U.S.C. § 1692e(11). The complete contents of Mr. Kuzia's June 29, 2012 voicemail are as follows:

> This is a confidential message for Beulah Rose, if we have reached the wrong number for this person, please give us a call back at 866-204-3699 so we can remove your telephone number and if you will please erase this message. If this is the correct phone number for . . . Beulah Rose . . . ma'am this is the Law Office of Larry Roach, I do need a return phone call as soon as possible at 866-204-3699, my direct extension is 4003.

1

Compl. Ex. A (docket no. 1-1).

Preceding that call, on May 25, 2012, the creditor GE Money Retail Bank assigned Plaintiff's delinquent account ($2,080.59 credit card debt) to Defendants for collection purposes. Defendants' subsequent collection efforts included several phone calls and messages for the Plaintiff.   In every message except the one left on June 29, 2012, Defendants' employees disclosed that the communication was from a debt collector, was an attempt to collect a debt, and that any information obtained would be used for that purpose.

In support of their bona fide error defense, Defendants state that they have developed and implemented a comprehensive Compliance Program designed to ensure that their debt collection efforts comply with the FDCPA and state law.   For starters, candidates for a debt collector position attend one week of initial training, and then must pass a written exam designed to test their knowledge and understanding of the FDCPA, including the disclosure requirements under § 1692e(11).   Candidates for a debt collector position are required to score at least 90% on the exam to attain a passing score, and candidates have two opportunities to pass the exam before they are removed from consideration.

Once employed, Defendants state that each of their employees is given a copy of their 46-page Compliance Policy and Procedure Manual ("Manual"), updated on at least an annual basis, which includes Defendants' policies and procedures designed to ensure compliance with the FDCPA.   In addition, Defendants state that their employees receive monthly training on significant FDCPA developments and industry trends.   Furthermore, their debt collectors must pass a yearly re-examination of FDCPA compliance issues and procedures in order to continue communicating with debtors.

Defendants also state that all debt collectors are subject to a minimum of one monitored collection call per week. These calls are scored for FDCPA compliance, and any debt collector that scores below 90% receives additional training. Defendants' debt collectors are instructed to follow a seven-step process to ensure that their communications with consumers comply with FDCPA requirements. For assistance, each debt collector is provided with a copy of the required language in "script form," stating as follows:

> This is a confidential message for _____. If we have reached the wrong number for this person, please call use at (866) 899-0475 to remove your phone number and erase this message. If this is the correct phone number for _____, but you are not _____, please skip this message. If you are _____, please continue to listen to this message. [pause 4 seconds] Mr./Ms. _____, you should not listen to this message so that other people can hear it as it contains personal and private information. [pause 4 seconds] This is _____, from the Law Office of Larry Roach. This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose, please contact me about an important business matter at (866) 899-0475.

Aff. of Lawrence Joseph Roach ¶ 23 (docket no. 17-2). According to Defendants, any debt collector that fails to comply with the Defendants' policies and procedures, including failing to inform a consumer that a call is from a debt collector in an attempt to collect a debt, and that any information obtained will be used for that purpose, is subject to progressive discipline, including termination.

Billy Kuzia was one of Defendants' employees, and around the time he left the June 29, 2012 voicemail for Plaintiff, he had been employed by the Defendants as a debt collector for approximately seven years. During that period, Mr. Kuzia completed the aforementioned pre- and post-employment screening, testing, and education programs regarding the FDCPA, including leaving FDCPA-compliant voicemail messages. Mr. Kuzia also kept a reference copy of Defendants' telephone script, with 14-point font, in a visible location at his workstation.

Mr. Kuzia states that he became distracted and lost his place while reading the script during that June 29, 2012 voicemail message, and "inadvertently and mistakenly failed to read the section that states 'this is an attempt to collect a debt by a debt collector.'"  Mr. Kuzia states that the omission was unintentional, was not done for the purposes of being deceptive or to mislead the Plaintiff, and occurred notwithstanding Defendants' policies and procedures to prevent such a mistake.  Defendants state that Mr. Kuzia had no record of non-compliance with either general or specific FDCPA requirements prior to leaving that voicemail message.  Mr. Kuzia was not disciplined for his failure to include those required disclosures on June 29, 2012.

## II.   LEGAL STANDARD

Summary judgment under Rule 56 should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50.

In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The party seeking summary judgment bears the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex,* 477 U.S. at 325.  If the moving party sufficiently supports its motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts illustrating genuine

issues for trial. *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008) (citation omitted). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); *Mitchell v. Data Gen. Corp.,* 12 F.3d 1310, 1315–16 (4th Cir. 1993). *See also Cheatle v. U.S.*, 589 F. Supp. 2d 694, 698 (W.D. Va. 2008) ("Indeed, the non-moving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation.") (citation omitted).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249. Ultimately, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III.   DISCUSSION

### A.  Defendants' Bona Fide Error Defense

Defendants do not dispute the underlying allegation of Plaintiff's claim, pursuant to 15 U.S.C. § 1692e(11): that Defendants' employee left a voicemail in which he failed to disclose that he was a debt collector, attempting to collect a debt, and that all information would be used for that purpose.[1] Instead, Defendants state that they are entitled to the bona fide error defense under the statute, whereby:

---

[1] That FDCPA provision states as follows:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that (1) the violation was not intentional; (2) it resulted from a bona fide error; and (3) the error occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  Bona fide error is an affirmative defense, for which the debt collector bears the burden of proof.  *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 375 (4th Cir. 2012).

Whereas the intent (1) prong of the bona fide error defense is a subjective test, the bona fide (2) and the procedures (3) prongs are objective tests.  *Johnson v. Riddle*, 443 F.3d 723, 728-29 (10th Cir. 2006) (citations omitted).  Regarding the first prong, the bona fide error defense requires only the negation of specific intent to violate the FDCPA, and courts recognize that "subjective intent can often only be shown by inferential evidence."  *Id.*  at 728.  Regarding the second prong, a bona fide error is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake."  *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005) (citation omitted).  Regarding the third prong, "[t]he procedures themselves must be explained, along with the manner in which they were adapted to avoid the error.  Only then is the mistake entitled to be treated as one made in good faith."  *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) (internal citation omitted).  In effect, the inquiry for this last prong is a two-step test: first, whether the debt collector "maintained"—*i.e.*, actually employed or implemented—procedures to avoid errors; and second, whether the procedures were "reasonably adapted" to avoid the specific error at issue.  *Johnson*, 443 F.3d at 729 (citations omitted).

---

15 U.S.C. § 1692e(11).

Mr. Kuzia states that his omissions in this case were unintentional, and not done for the purpose of being deceptive or to mislead the Plaintiff.  Rather, according to Defendants, "this was simply a good faith omission."  Plaintiff has not contested that assertion at any point.  Furthermore, it is undisputed that Plaintiff received several FDCPA-compliant telephone calls and messages prior to Mr. Kuzia's June 29, 2012 voicemail, which casts light upon Defendants' good faith and lack of deceit and fraud.  In short, there is no evidence from which a jury could find that the Defendants' error was anything other than bona fide, or that the resulting violation of the FDCPA was intentional.

Regarding the third and final prong of the bona fide error defense, I find as a matter of law that Defendants have shown by unrebutted evidence policies and procedures reasonably adapted to prevent FDCPA violations, including the specific violation in this case, such that no jury could find to the contrary.  Defendants' training and instruction course for prospective employees includes all aspects of FDCPA compliance, and their hiring exam includes questions on the specific requirements of 15 U.S.C. § 1692e(11).  Only after completing the training program and attaining a passing score on the exam will Defendants hire a candidate.  Once hired, Defendants' employees are subject to ongoing training and annual testing, and are provided with a copy of their 46-page Manual, which is updated annually and includes 10 pages dedicated to telephone communications and leaving messages with consumers.

Furthermore, a Compliance Director is responsible for monitoring, at a minimum, one call per collector per week, and scoring those calls for compliance with the FDCPA.  Defendants' debt collectors are also required to follow a script to ensure that a collector is making FDCPA-compliant telephone calls.  When Mr. Kuzia left the June 29, 2012 voicemail for Plaintiff, he had a copy of Defendants' telephone script in a visible location at his

workstation.   Prior to that voicemail, in his seven years working for Defendants as a debt collector, Mr. Kuzia had never been disciplined or reprimanded for violating any provision of the FDCPA.

In response, Plaintiff contends that there is no evidence that Defendants' employees must answer questions on the required warnings under § 1692e(11) correctly in order to pass their written exams, or that the failure of one of their employees to identify him or herself as a debt collector would trigger additional training or disciplinary action under their compliance program. Plaintiff also notes that Defendants settled other consumer complaints brought over the past three years for the same violation alleged here, which she contends is further evidence that questions of material fact remain as to whether Defendants' procedures were designed to prevent the specific violation in this case.   In reply, Defendants state that the circumstances of those cases were different from the instant matter, and all but one predate a May 2012 change in their compliance program.   More significantly, the standard for Defendants' bona fide defense is whether their policies and procedures were "reasonably adapted" to avoid the specific error at issue.   I find that Defendants have conclusively established that they actually employ both a general program to comply with the FDCPA, and specific procedures to avoid the error in this case.

Two district court cases provide helpful illustrations for this matter.   In *Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F. Supp. 2d 485, 493 (S.D. Ohio 2012), the court held that a debt collector established a bona fide error defense to a claim that it failed to disclose it was a debt collector in two voicemail messages.   Along with two weeks of initial training regarding the FDCPA, and specifically the requirements of 15 U.S.C. § 1692e(11), the collector in that case held mandatory quarterly training sessions for its employees, and attached a note card to every

8

collector's desk that included the required disclosure language.  *Id.* at 494.  The representative that left the voicemails had achieved "satisfactory scores" on her tests, and had left plaintiff two other messages that were in total compliance with the FDCPA.  *Id.*  at 495.  The court found that "there [was] no evidence before the Court from which a jury could find that the Defendant's error was anything other than bona fide or that any resulting violation of the FDCPA was intentional," and given those procedures, granted summary judgment for the defendant.  *Id.* at 495.

Similarly, in *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 390 (D. Del. 1991), plaintiffs claimed that defendants violated 15 U.S.C. § 1692e(11) by not disclosing in three separate telephone calls that they were attempting to collect a debt, and that any information would be used for that purpose.  Again, the court found that defendants established a bona fide error defense, and granted summary judgment in their favor.  *Id.* at 389 ("Clerical errors and misstatements of this kind are the kinds of 'violations' of the Act for which [the bona fide error defense] was intended to provide a defense.").  The court noted that defendants maintained procedures intended to ensure compliance with the FDCPA, including holding required seminars and providing its collection agents with a FDCPA manual and a posted 5" x 8" card with FDCPA-compliant language.  *Id.*  Because plaintiffs had failed to provide any contravening evidence, or create any doubt as to the procedures maintained by defendants or the intent of its agent, the court granted summary judgment in defendants' favor.  *Id.* at 390.

Lastly, Plaintiff in this case argues that Defendants' voicemail omissions were neither a clerical or factual error, to which the bona fide defense is meant to apply.  In support, Plaintiff cites *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S. Ct. 1605 (2010), in which the Supreme Court held that the bona fide error defense did not apply to

violations arising from a debt collector's incorrect interpretation of the FDCPA's legal requirements. *Id.* at 1606. However, Mr. Kuzia's omissions during that June 29, 2012 voicemail were not the type of mistakes of law considered in *Jerman*. *See id.* at 1609-11 (Defendants not entitled to bona fide error defense where they erroneously represented to plaintiff that a debt will be assumed valid absent a written dispute.). Relevant to this case, the Supreme Court stated in *Jerman* that it "need not and do not decide today the precise distinction between clerical and factual errors, or what kinds of factual mistakes qualify under the FDCPA's bona fide error defense." *Id.* at 1618 n.12.[2]

The Eastern District of Virginia recently acknowledged that "[a]vailable case law does not establish a clear set of standards that a debt collector defendant must satisfy in order to qualify for the bona fide error defense." *McLean v. Ray*, 2011 WL 1897436, at *6 (E.D. Va. May 18, 2011); *see also Ocwen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011) ("Despite surveying the case law, we have located no definitive list of procedures, or even universally applicable parameters, by which to assess the third element [of the defense]. Rather, the legal analysis has proceeded on a case-by-case basis and depended upon the particular facts and circumstances of each case."). In this case, Mr. Kuzia's voicemail omissions were not the result of a judgment or legal error. Instead, they were the result of a human error, in good faith, and I find that the bona fide error defense applies to these facts. Given the unrebutted evidence regarding their policies and procedures to ensure compliance with the letter and spirit of the FDCPA, and specifically the requirements of § 1692e(11), Defendants are entitled to summary judgment on their bona fide error defense.

---

[2] In its discussion of a parallel provision in the Truth in Lending Act ("TILA") (codified at 15 U.S.C. 1640(c)), the Court noted that the scope of the bona fide error defense in that statute was not expressly defined either. *See id.* at 1616-17.

## IV. CONCLUSION

For the foregoing reasons, I grant Defendants' motion for summary judgment. An appropriate order accompanies this memorandum opinion.

The clerk of the court is hereby directed to send a certified copy of this memorandum opinion to all counsel of record.

Entered this ___12th___ day of April, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

11